LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff,*
*FLSA Collective Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LUCAS CABRERA
*on behalf of himself,*
*FLSA Collective Plaintiffs and the Class,*                    Case No.:

                  Plaintiff,          **CLASS AND COLLECTIVE**
                                                               **ACTION COMPLAINT**

                v.                 Jury Trial Demanded

ALTAMAREA GROUP, LLC,
MRMADISON LLC,
     d/b/a RISTORANTE MORINI,
AMG PARK LLC,
     d/b/a VAUCLUSE
     and OMAR AT VAUCLUSE,
ALTAMAREA LLC,
     d/b/a MAREA,
LETTA #1, LLC,
     d/b/a NICOLETTA,
AMG HOTELS #1, LLC,
     d/b/a AI FIORI,
218, LLC,
     d/b/a OSTERIA MORINI,
MICHAEL WHITE and
AHMASS FAKAHANY,

               Defendants.

---

Plaintiff, LUCAS CABRERA (herein, "Plaintiff"), on behalf of himself and others

similarly situated, by and through their undersigned attorneys, hereby file this class and

collective action Complaint against Defendants, ALTAMAREA GROUP, LLC, MRMADISON LLC, d/b/a RISTORANTE MORINI, AMG PARK LLC, d/b/a VAUCLUSE and OMAR AT VAUCLUSE, ALTAMAREA LLC, d/b/a MAREA, LETTA #1, LLC, d/b/a NICOLETTA, AMG HOTELS #1, LLC, d/b/a AI FIORI, 218, LLC, d/b/a OSTERIA MORINI, (collectively "Corporate Defendants"), MICHAEL WHITE and AHMASS FAKAHANY ("Individual Defendants," and together with Corporate Defendants, "Defendants"), and state as follows:

## INTRODUCTION

1.     Plaintiff allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et. seq.* ("FLSA"), that they are entitled to recover from Defendants: (1) unpaid minimum wage and overtime due to invalid tip credit, (2) illegally retained gratuities, (3) unpaid wages including overtime due to time shaving, (4) liquidated damages, and (5) attorneys' fees and costs.

2.     Plaintiff further allege that, pursuant to the New York Labor Law ("NYLL"), they are entitled to recover from Defendants: (1) unpaid minimum wage and overtime due to invalid tip credit, (2) illegally retained gratuities, (3) unpaid wages including overtime due to time shaving, (4) statutory penalties, (5) liquidated damages, and (6) attorneys' fees and costs.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

## PARTIES

5.     Plaintiff LUCAS CABRERA is a resident of Queens County, New York.

6.     Corporate Defendant ALTAMAREA GROUP, LLC owns and operates a restaurant enterprise at the following New York City locations with the following tradenames:

    a.   Marea – 240 Central Park South, New York, NY 10019;

    b.   Osteria Morini – 218 Lafayette St, New York, NY 10012;

    c.   Ai Fiori – 400 Fifth Avenue, 2nd Level, New York, NY 10018;

    d.   Nicoletta – 160 Second Avenue, New York, NY 10003;

    e.   Ristorante Morini – 1167 Madison Avenue, New York, NY 10028;

    f.   Vaucluse – 100 East 63rd Street, New York, NY 10065;

    g.   Nicoletta at Citi Field – 41 Seaver Way, Queens, NY 11368; and

    h.   Omar at Vaucluse – 100 East 63rd Street, New York, NY 10065 (together, the "Restaurants").

7.     Corporate Defendant ALTAMAREA GROUP, LLC also operates two delivery operations in New York City:

    a.   the Italian steakhouse Costata Delivered on Caviar, and

    b.   Pasta on Demand by Chef Michael White on UberEATS.

8.     Defendants own and operate a restaurant enterprise through "Altamarea Group." Specifically, the Restaurants are or were engaged in related activities, shared common ownership and had a common business purpose. The Restaurants are commonly owned through the common control of Individual Defendants MICHAEL WHITE and AHMASS FAKAHANY. Specifically, the Restaurants engage in related activities and have a common business purpose in the following ways:

    a.   According to Altamarea Group's webpage, Individual Defendants "shared a vision to create restaurant brands that are distinct in concept but united in

delivering unsurpassed quality and outstanding service . . . [and] Ahmass and Michael rely on a vast team of talented people who share their vision around client service, culinary consistency and quality, and operating excellence." *See* **Exhibit A**.

b.  All the Restaurants use a central marketing department, and share a common website at https://www.altamareagroup.com/.

c.  All handbooks, and notices and contracts of Restaurant employees are issued through the same central department and all list Altamarea Group on them

d.  All the Restaurants' locations, hours of operation, and reservations are exhibited on a common *See* **Exhibit A** for the webpage of the Website where Restaurants' locations and hours may be accessed by clicking on the links.

e.  All the Restaurants' menus are exhibited when the Website-visitor clicks on each of the Restaurant links on the Website. *See* **Exhibit A** for the webpage of the Website where Restaurants' menus may be accessed by clicking on the links.

f.  All the Restaurants offer their venues for private parties and events on one (1) common Website. *See* **Exhibit A** for the private events page on the Website.

g.  All the Restaurants jointly sell one (1) common gift card that is available for use at any of the Restaurants. *See* **Exhibit A** for an online form where gift cards for the Restaurants can be purchased.

h.  Employment positions for all the Restaurants are jointly listed and may be applied for through the shared Website. *See* **Exhibit A** for the Website's link to the Careers page.

i.  The Restaurants regularly share and exchange non-exempt employees, who are interchangeable among the Restaurants. Defendants require employees to work at Restaurant locations different from their primary place of employment on special occasions (e.g., parties or private events) when one (1) location is short-staffed. Defendants, on occasion, transfer employees between different locations based on their own business needs. *See* **Exhibit B**, Declarations of Former Altamarea Group Workers.

j.  Employees were regularly required to transport items between Restaurant locations, in accordance with the directives of central management, including the Individual Defendants. *See* **Exhibit B**, Declarations of Former Altamarea Group Workers.

9.  Defendants operate the Restaurants through the following Corporate Defendants:

(a) Corporate Defendant ALTAMAREA GROUP, LLC is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business and an address for service of process located at 611 Broadway, Suite 415, New York, NY, 10012. Individual Defendants are the owners of ALTAMAREA GROUP, LLC.

(b) Corporate Defendant MRMADISON LLC d/b/a RISTORANTE MORINI is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 1167 Madison Avenue, New York, NY 10028 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate Ristorante Morini through Corporate Defendant

MRMADISON LLC d/b/a RISTORANTE MORINI. Individual Defendants are the owners of MRMADISION LLC d/b/a RISTORANTE MORINI.

(c)  Corporate Defendant AMG PARK LLC d/b/a VAUCLUSE and OMAR AT VAUCLUSE is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 100 East 63rd Street, New York, NY 10065 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate Vaucluse through Corporate Defendant AMG PARK LLC d/b/a VAUCLUSE. Individual Defendants are the owners of AMG PARK LLC d/b/a VAUCLUSE.

(d)  Corporate Defendant ALTAMAREA LLC d/b/a MAREA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 240 Central Park South, New York, NY 10019 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate Marea through Corporate Defendant ALTAMAREA LLC d/b/a MAREA. Individual Defendants are the owners of ALTAMAREA LLC d/b/a MAREA.

(e)  Corporate Defendant LETTA #1, LLC d/b/a NICOLETTA is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 160 Second Avenue, New York, NY 10003 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants

operate NICOLETTA through Corporate Defendant LETTA #1, LLC d/b/a NICOLETTA. Individual Defendants are the owners of LETTA #1, LLC d/b/a NICOLETTA.

(f) Corporate Defendant AMG HOTELS #1, LLC d/b/a AI FIORI, is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 400 Fifth Avenue, 2nd Level, New York, NY 10018 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate AI FIORI through Corporate Defendant AMG HOTELS #1, LLC d/b/a AI FIORI. Individual Defendants are the owners of AMG HOTELS #1, LLC d/b/a AI FIORI.

(g) Corporate Defendant 218, LLC d/b/a OSTERIA MORINI, is a domestic limited liability company organized under the laws of the State of New York, with a principal place of business located at 218 Lafayette St, New York, NY 10012 and an address for service of process located at c/o Altamarea Group, LLC, Attn: General Counsel, 611 Broadway, Suite 415, New York, NY 10012. Defendants operate OSTERIA MORINI through Corporate Defendant 218, LLC d/b/a OSTERIA MORINI. Individual Defendants are the owners of 218, LLC d/b/a OSTERIA MORINI.

10.   Individual Defendants:

(a) Individual Defendant MICHAEL WHITE is an owner of Corporate Defendants ALTAMAREA GROUP, LLC, MRMADISON LLC, d/b/a RISTORANTE MORINI, AMG PARK LLC, d/b/a VAUCLUSE and OMAR AT VAUCLUSE,

ALTAMAREA LLC, d/b/a MAREA, LETTA #1, LLC, d/b/a NICOLETTA, AMG HOTELS #1, LLC, d/b/a AI FIORI, 218, LLC, d/b/a OSTERIA MORINI. MICHAEL WHITE exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs and the Class. With respect to Plaintiff, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all times, employees could complain to MICHAEL WHITE regarding any of the terms of their employment, and MICHAEL WHITE would have the authority to effect any changes to the quality and terms of employees' employment. MICHAEL WHITE ensured that employees effectively serve customers and that the business is operating efficiently and profitably. MICHAEL WHITE exercised functional control over the business and financial operations of all Corporate Defendants. MICHAEL WHITE had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

(b) Individual Defendant AHMASS FAKAHANY is an owner and chief executive officer of Corporate Defendants ALTAMAREA GROUP, LLC, MRMADISON LLC, d/b/a RISTORANTE MORINI, AMG PARK LLC, d/b/a VAUCLUSE and OMAR AT VAUCLUSE, ALTAMAREA LLC, d/b/a MAREA, LETTA #1, LLC, d/b/a NICOLETTA, AMG HOTELS #1, LLC, d/b/a AI FIORI, 218, LLC, d/b/a OSTERIA MORINI. AHMASS FAKAHANY exercised control over the terms and conditions of Plaintiff's employment and those of FLSA Collective Plaintiffs

and the Class. With respect to Plaintiff, FLSA Collective Plaintiffs and the Class, he exercised the power to (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment. At all relevant times, employees could complain to AHMASS FAKAHANY regarding any of the terms of their employment, and AHMASS FAKAHANY would have the authority to effect any changes to the quality and terms of employees' employment. AHMASS FAKAHANY ensured that employees effectively serve customers and that the business is operating efficiently and profitably. AHMASS FAKAHANY exercised functional control over the business and financial operations of all Corporate Defendants. AHMASS FAKAHANY had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs and Class members and could reprimand employees.

11.  At all relevant times, each of the Corporate Defendants was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA and New York Labor Law and the Regulations thereunder.

12.  At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs and Class members were directly essential to the businesses operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

13.  Plaintiff bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including waiters, servers, bussers, food runners, baristas, food preparers, cooks, bartenders, and barbacks, among others) employed

by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

14.    At all relevant times, Plaintiff and other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages. A subclass of tipped employees has a claim for unpaid minimum wage, including those from an improperly deducted tip credit, and a claim for illegally retained tips. The claims of Plaintiff stated herein are essentially the same as those of other FLSA Collective Plaintiffs.

15.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

16.    Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including waiters, servers, bussers, food runners, baristas, food preparers, cooks, bartenders, and barbacks, among others) employed by Defendants at the Restaurants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

17.    All said persons, including Plaintiff, are referred to herein as the "Class". The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

18.    The proposed Class is numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants, there is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff is a member of both the Class and the Tipped Subclass.

19.    Plaintiff's claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of (i) failing to pay proper wages, including those due to time shaving, (ii) failing to provide Class members with proper wage statements with every payment of wages, and (iii) failing to properly provide wage notices to Class members, at date of hiring and annually, per requirements of the New York Labor Law.

20.    With regard to Plaintiff and the Tipped Subclass, Defendants also failed to pay them the proper minimum wage because Defendants were not entitled to claim any tip credit because they failed to meet statutory requirements under the New York Labor Law. Plaintiff and the

Tipped Subclass suffered from Defendants' failure to pay minimum wage due to Defendants' invalid tip credit allowance because Defendants (i) failed to properly provide tip credit notice at hiring and annually thereafter, (ii) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek, (iii) implemented an invalid tip pooling scheme in which managers participated in the tip pool and (iv) illegally retained tips, (v) failed to provide proper wage statements clearly indicating tip credit allowance for each payment period, and (vi) failed to accurately keep track of daily tips earned and maintain records thereof.

21.    Plaintiff claims that Defendants illegally retained gratuities because they were subject to a tip pooling scheme where managers, David [LNU], and Eliza [LNU], who didn't service customers participated in the tip pool.

22.    Respondents knowingly and willfully operated their business with a policy of not compensating Claimants for all hours, including overtime hours, worked due to a policy of time shaving.

23.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24.    Plaintiff is able to fairly and adequately protect the interests of the Class and have no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

25.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.    Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their

employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.    Whether Defendants employed Plaintiff and the Class within the meaning of the New York law;

b.    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not properly pay Plaintiff and the Class members;

c.    At what common rate, or rates subject to common methods of calculation, was and are Defendants required to pay Plaintiff and the Class members for their work;

d.    Whether Defendants properly notified Plaintiff and the Class members of their hourly rates and overtime rates;

e.    Whether Defendants paid Plaintiff and Class members the proper overtime compensation under the New York Labor Law;

f.    Whether Defendants properly provided notice to all tipped employees that Defendants were taking a tip credit;

g.    Whether Defendants accurately tracked the amount of tips earned each day and maintained records thereof;

h.    Whether Defendants caused tipped employees to engage in non-tipped duties exceeding 20% of each workweek;

i.  Whether Defendants took the proper amount of tip credit allowance for each payment period under the New York Labor Law;

j.  Whether Defendants established an invalid tip pooling arrangement by illegally including managers in the tip pool;

k.  Whether Defendants established an invalid tip pooling arrangement by instituting an invalid tip pooling scheme in which Plaintiff and the Tipped Subclass did not agree to;

l.  Whether Defendants retained any portion of the gratuities for their tipped employees;

m.  Whether Defendants provided proper wage statements informing (i) tipped employees of the amount of tip credit taken for each payment period, and (ii) all non-exempt employees of information required to be provided on wage statements under the New York Labor Law;

n.  Whether Defendants provided proper wage notice, at date of hiring and annually thereafter, to all non-exempt employees per requirements of the New York Labor Law;

o.  Whether Defendants paid Plaintiff and Class members the proper wage for all hours worked;

p.  Whether Defendants properly compensated Plaintiff and Class members their proper overtime under state law; and

q.  Whether Defendants caused time-shaving by paying Plaintiffs and Class members only for those hours which they were scheduled to work, rather than for the actual hours that they worked;

## STATEMENT OF FACTS

28.    In or about December 2015, Plaintiff was hired by Defendants to work as a server at Defendants' Ai Fiori restaurant, located at 400 Fifth Avenue, 2nd Level, New York, NY 10018. Plaintiff's employment with Defendants terminated on or about September 2019.

29.    Throughout Plaintiff's employment with Defendants, Plaintiff was regularly scheduled to work five (5) days per week, from 6 am to 10:30 am. During Plaintiff's employment with Defendants, FLSA Collective Plaintiffs and Class members worked similar hours.

30.    Throughout Plaintiff's employment with Defendants, he was paid the New York State tip credit minimum wage for food service workers. During Plaintiff's employment with Defendants, FLSA Collective Plaintiffs and Class members were paid at similar rates.

31.    Throughout Plaintiff's employment with Defendants, he was required to wait tables and perform non-tipped activities cleaning and prepping the restaurant for the next shift. Even though Defendants required tipped employees to engage in non-tipped activities for hours exceeding 20% of the total hours worked each workweek, Defendants improperly claimed tip credit for all hours worked by tipped employees. Similarly, subclass of FLSA Collective Plaintiffs and the Tipped Subclass were similarly situated.

32.    Plaintiff and the Tipped Subclass suffered from Defendants' retention of gratuities. Defendants implemented a policy at the Restaurants where Plaintiff and other non-exempt tipped employees were subject to a tip pool they did not agree to, which was set by and enforced by Defendants, wherein managers such as David [LNU], and Eliza [LNU]  from Ai Fiori, participated in the tip pool. David, and Eliza are managers that have the power to hire and fire, set schedules, open and close the restaurant, they are required to count money in the cash

register, and they count and divide the tips. As managers, they are paid on a salary basis, and they do not serve customers. As a result, Defendants illegally retained tips through the tip pooling arrangement by retaining a portion of the tips to be distributed to Defendants' managers. Such improper tip pooling policy invalidates Defendants' tip credit allowance.    Moreover, Defendants retained service and/or administrative fees for large events, which rightly should have been passed along to Plaintiff and other members of the Tipped Subclass.

33.    Plaintiff, subclass of FLSA Collective Plaintiffs and the Tipped Subclass were paid below the minimum wage at an invalid "tip credit" minimum wage. With respect to Plaintiff, a subclass member of FLSA Collective Plaintiffs and the Tipped Subclass, Defendants were not entitled to claim any tip credit allowance under the FLSA or NYLL because Defendants (i) failed to properly provide tip credit notice in violation of the FLSA; (ii) failed to inform them that the tip credit claimed by Defendants cannot exceed the amount of tips actually received by them in violation of the FLSA; (iii) failed to inform that all tips received by them are to be retained by them except pursuant to a valid tip pooling arrangement in violation of the FLSA; (iv) failed to inform that tip credit will not apply unless they have been informed of the foregoing tip credit notice requirement in violation of the FLSA, (v) claimed tip credit for all hours worked despite having caused tipped employees to engage in non-tipped duties for hours exceeding 20% of the total hours worked each workweek in violation of the FLSA and NYLL, (vi) illegally retained gratuities, (vii) implemented an invalid tip pooling because Defendants retained tips, (viii) implemented an invalid tip pooling by including managers, (ix) failed to accurately track daily tips earned or maintain records thereof, (x) failed to properly provide tip credit notice at hiring and annually thereafter in violation of the NYLL, and (xi) failed to provide a proper wage

statement with every payment of wages informing Plaintiff and other tipped employees of the amount of tip credit deducted for each payment period, in violation of the NYLL.

34.    Throughout his entire employment, Plaintiff, FLSA Collective Plaintiffs and Class members were similarly forced to engage in non-compensated work past their scheduled shift. Plaintiff, FLSA Collective Plaintiffs and Class members were not properly compensated for all hours worked, due to Defendant's policy of time-shaving. Defendants deducted one and a half (1.5) hours per workday for unscheduled work from Plaintiff, FLSA Collective Plaintiffs and Class members. This resulted in Plaintiff, FLSA Collective Plaintiffs and Class members not being compensated for seven and a half (7.5) hours per week. As a result, Plaintiff, FLSA Collective Plaintiffs and Class members suffered from a total of seven and a half (7.5) hours of time-shaving per workweek.

35.    Defendants failed to provide Plaintiff and the Class members with proper wage notices at hiring and annually thereafter. Plaintiff did not receive proper wage notices either upon being hired or annually since the date of hiring in violation of the New York Labor Law.

36.    Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiff, FLSA Collective Plaintiffs and Class members for all hours worked due to a policy of time-shaving.

37.    Defendants did not provide Plaintiff with proper wage statements at all relevant times. Similarly, the Class members did not receive proper wage statements, in violation of NYLL.

38.    Defendants knowingly and willfully operated their business with a policy of not paying either the FLSA minimum wage or the New York State minimum wage to Plaintiff,

FLSA Collective Plaintiffs and Class members. Defendants were not entitled to claim any tip credits under FLSA or NYLL.

39.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.

40.    Defendants failed to provide proper wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the New York Labor Law.

41.    Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs and Class members, in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

## COUNT I

## VIOLATION OF THE FAIR LABOR STANDARDS ACT

42.    Plaintiff reallege and reaver Paragraphs 1 through 41 of this class and collective action Complaint as fully set forth herein.

43.    At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207 (a).

44.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of the FLSA.

45.    At all relevant times, each Corporate Defendant had gross annual revenues in excess of $500,000.

46.    At all relevant times, Defendants had a policy and practice of failing to pay the statutory minimum wage to Plaintiff and FLSA Collective Plaintiffs for their hours worked. Defendants were also not entitled to claim any tip credits under the FLSA.

47.    At all relevant times, Defendants showed a willful disregard for the provisions of the FLSA by instituting an illegal tip-pooling scheme in which management retained a portion of the tips and included managers in the tip pool.

48.    At all relevant times, the Defendants engaged in a policy of time-shaving, including refusing to compensate Plaintiffs and FLSA Collective Plaintiffs for all of their hours worked.

49.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiff intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

50.    Defendants failed to properly disclose or apprise Plaintiff and FLSA Collective Plaintiffs of their rights under the FLSA.

51.    As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

52.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, damages representing disgorgement of illegally retained tips, unpaid wages, including those resulting from time-shaving, plus an equal amount as liquidated damages.

53.    Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable

attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

## COUNT II

## <u>VIOLATION OF THE NEW YORK LABOR LAW</u>

54.    Plaintiff realleges and reaver Paragraphs 1 through 53 of this class and collective action Complaint as fully set forth herein.

55.    At all relevant times, Plaintiff and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§ 2 and 651.

56.    Defendants willfully violated Plaintiff and the Class members' rights by instituting an illegal tip-pooling scheme in which Class members were required to share tips with management. In doing so, Defendants willfully deprived Plaintiff and Class members of their lawfully earned wages.

57.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required under the New York Labor Law.  Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy the requirements under the NYLL because such tip credit allowance was never clearly included in wage statements to tipped employees for each payment period. Defendants also provided fraudulent wage statements that failed to accurately reflect the number of hours worked and their proper compensation, including tips illegally withheld from Plaintiff and Class members.

58.    At all relevant times, the Defendants engaged in a policy of time-shaving, refusing to compensate Plaintiff and Class members for all of their hours that they worked each week.

59.    Defendants willfully violated Plaintiff's and Class members' rights by failing to pay them proper wages in the lawful amount for hours worked. Defendants were not entitled to claim

21

any tip credits.

60.    Defendants knowingly and willfully operated their business with a policy of not providing all non-exempt employees proper wage notice, at date of hiring and annually thereafter, as required under the New York Labor Law.

61.    Due to the Defendants' New York Labor Law violations, Plaintiff and Class members are entitled to recover from Defendants unpaid wages, damages representing disgorgement of illegally retained tips, unpaid overtime wages, resulting from time shaving and invalid tip credit, reasonable attorneys' fees, liquidated damages, statutory penalties and costs and disbursements of the action, pursuant to New York Labor Law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of themselves, FLSA Collective Plaintiffs and Class members, respectfully request that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid wages due under the FLSA and the New York Labor Law, including those due to an invalid tip credit and time shaving;

d.    An award equal to the amount of the improperly retained tips withheld by Defendants;

e.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

f.   An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the New York Labor Law;

g.   An award of prejudgment and postjudgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.   Designation of Plaintiff as Representatives of the FLSA Collective Plaintiffs;

i.   Designation of this action as a class action pursuant to F.R.C.P. 23;

j.   Designation of Plaintiff as Representatives of the Class; and

k.   Such other and further relief as this Court deems just and proper.


## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demand trial by jury on all issues so triable as of right by jury.


Dated: February 2, 2020
      New York, New York

                            Respectfully submitted,

                         By:   */s/ C.K. Lee*_____
                               C.K. Lee, Esq.

                               LEE LITIGATION GROUP, PLLC
                               C.K. Lee (CL 4086)
                               Anne Seelig (AS 3976)
                               148 West 24th Street, 8th Floor
                               New York, NY 10011
                               Tel.: 212-465-1180
                               Fax: 212-465-1181
                               *Attorneys for Plaintiff,*
                               *FLSA Collective Plaintiffs and the Class*