**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LUCAS CABRERA
*on behalf of himself, FLSA Collective Plaintiffs and the Class,*

Plaintiff,

v.

ALTAMAREA GROUP, LLC,
MRMADISON LLC,
d/b/a RISTORANTE MORINI,
AMG PARK LLC,
d/b/a VAUCLUSE
and OMAR AT VAUCLUSE,
ALTAMAREA LLC,
d/b/a MAREA,
LETTA #1, LLC,
d/b/a NICOLETTA,
AMG HOTELS #1, LLC,
d/b/a AI FIORI,
218, LLC,
d/b/a OSTERIA MORINI,
MICHAEL WHITE and AHMASS FAKAHANY,

Defendants.

**Case No. 1:21-cv-00922-LJL**

**DECLARATION OF C.K. LEE, ESQ.**

I, C.K LEE, under penalty of perjury, declare as follows:

1. I am an attorney in the firm of Lee Litigation Group, PLLC, counsel for Plaintiff in this matter, and am fully familiar with the facts and circumstances as set forth herein.

2. Lee Litigation Group, PLLC represents Lucas Cabrera and five other claimants who are pursuing their wage claims against Defendants through arbitration with American Arbitration Association ("AAA").

3. One of these five arbitrations began as a Federal action in the Southern District

Court of New York under the case name: *Pineda Tenen v. Altamarea Group, LLC et al* – 20-cv-01851. Soon after filing that case, Defendants' counsel sent me and my firm a copy of an arbitration agreement that had been signed by Mr. Tenen. Upon review of the agreement, we realized the agreement was not signed by Defendants. I and my associates were not convinced such an agreement was enforceable which is evidenced in the parties' email correspondence. *See* **Exhibit E**, true and accurate copies of correspondence with Defendants. However, Defendants provided a second, fully signed arbitration agreement from 2013 for Mr. Tenen, so we proceeded to dismiss the action from Federal Court and filed directly with AAA. *See Id.*

4. Once Mr. Tenen dismissed his Federal case, the action was re-filed on June 17, 2020 before AAA along with the separate actions of each of the three following claimants: (1) TIFFANY RAMIREZ, (2) IGNACIO RAMIREZ, and (3) AHLAL AHMED (the "Arbitrations").

5. As Defendants describe in the Affidavit of John Orsini, after claimants filed their Arbitrations, the parties engaged in settlement discussions on this matter, which lasted until mid-September of 2020. In mid-September of 2020, parties' initial settlement negotiations failed.

6. Given this failure, we began to reexamine the matter of these unsigned, potentially unenforceable, arbitration agreements. Our firm decided not to challenge the arbitration agreements of any individual for whom we had already filed before AAA. This decision was due in part to the costs and fees already incurred by the filing of these matters with AAA.

7. In October 2020, long after the filing of the above Arbitrations, our firm was retained another two former employees of Defendants, Lucas Cabrera and Jorge Palaquibay. By this time the firm had further researched the question of whether arbitration agreements that had not been countersigned by an employer were effective and enforceable. We found a lack of binding precedent under New York law and a Fifth Circuit's decision in *Huckaba v. Ref-Chem, L.P.*, 892

F.3d 686 (5th Cir. 2018). The *Huckaba* decision indicated that Defendants' failure to countersign their purported arbitration agreement with Mr. Cabrera had rendered it unenforceable. While this was a Fifth Circuit case, the factors for interpreting the enforceability of an unsigned contract seemed to be substantially similar between Texas and New York. Moreover, the Fifth Circuit case appeared especially on point under these circumstances.

8. Based on our view of the potential unenforceability of the arbitration agreement and Mr. Cabrera's wish to proceed on a class wide basis, Mr. Cabrera brought his claims before the Southern District of New York and Jorge Palaquibay entered into arbitration through AAA.

9. Defendants have been aware of Plaintiff Cabrera's intention to file his action in Federal Court since October of 2020. In fact, the parties had been discussing the enforceability of their arbitration agreements since even before then. In September of 2020, Defendants sent us a list of cases that they claimed definitively refuted our position. After a review, my associates and I concluded that the cases cited by Defendants were readily distinguishable from the instant one. Moreover, all of the distinguishable cases cited by Defendants were from non-binding district court cases, many of which included inapposite cases involving arbitration agreements found in handbooks. The one case Defendants cited involving binding precedent was *Moore v. T-Mobile USA Inc.*, 548 F. App'x 686, 687 (2d Cir. 2013). That case was entirely distinguishable from the facts herein as it involved a service agreement found inside a box, a circumstance where the need for signatures could not reasonably have been contemplated by the parties. Here, the language of Mr. Cabrera's arbitration agreement contemplates signature and the agreement even has a signature block for both Plaintiff and Defendant.

10. In addition to Defendants failing to cite to any binding precedent, the agreement itself indicated a requirement for a signature in its language. The arbitration agreement states

clearly it is a "MUTUAL ARBITRATION AGREEMENT." It even states in its introductory paragraph, "the company and I agree as follows: [.]" Given the mutuality of the terms of the agreement, the many references to the need for a signature would be expected to be mutual as well. The document states under ¶ 4, "I understand that…by signing this Agreement, I am giving up my right…" Again in ¶ 9 the agreement states, "[t]his Agreement supersedes any and all prior agreements or understandings…I signed prior to signing this agreement." The document even states in boldfaced, block-letters: "**I UNDERSTAND THAT MY SIGNING AND SUBMITTING THIS AGREEMENT IN THIS FASHION IS THE LEGAL EQUIVALENT OF HAVING PLACED MY HANDWRITTEN SIGNATURE ON THE AGREEMENT**." Moreover, the agreement had an unsigned signature block for Defendants further indicating a requirement for Defendants' signature. It is blackletter law in New York that "if the parties to an agreement do not intend it to be bound until it is reduced to writing and signed by both of them, they are not bound." *Scheck v. Francis*, 26 N.Y. 2d 466 (NY Crt. of Appeals, 1970). Given the lack of binding precedent, the language of the agreement, the unsigned signature block, and the clear law of New York, I and other attorneys at Lee Litigation Group concluded that Plaintiff had a reasonable probability of defeating a motion to compel arbitration and accordingly filed the Complaint with this Court.

11. I have repeatedly conveyed our arguments to Defendants' counsel in multiple meet and confers between October 2020 and March 2021, explaining my position that their authorities of distinguishable from the instant action. Two of these calls were on November 10, 2020, and on February 19, 2021, when I stressed that Defendants' cases concerned employee handbooks rather than freestanding agreements contemplating signature of both parties. *See Valdes v. Swift Transp. Co.*, 292 F. Supp. 2d 524, 531 (S.D.N.Y. 2003); *Beletsis v. Credit Suisse First Bos., Corp.*, 2002

WL 2031610, at *3 (S.D.N.Y. Sept. 4, 2002). At no time did Defendants ever inform me of the existence of an employee handbook containing arbitration provisions.

12. Defendants' counsel has been aware of our position here for many months. But it was only with the filing of Defendants' Motion to Enforce Arbitration and for Sanctions that they revealed to me the existence of an arbitration provision in Defendants' employee handbook (the "Handbook"). Had this been disclosed in October, I would have pursued Mr. Cabrera's claims in arbitration, given my assessment of the case law, as discussed above. Defendants' delay in disclosing the Handbook has caused my firm to incur unnecessary expenses and caused Mr. Cabrera to suffer unnecessary delays in this vindication of his claims.

13. Learning of the Handbook sooner would also have prevented considerable delay and expense. First, Plaintiff would have never incurred the fees and costs to prepare a complaint for filing in Federal Court. We would have conceded and immediately filed for arbitration. Second Plaintiff would not have had to defend against Defendants' efforts to consolidate the separately filed arbitrations for four of the other claimants. For the arbitrations of Tiffany Ramirez, Igancio Ramirez, Angel Pineda Tenen, and Ahlal Ahmed, Defendants caused Plaintiff to expend considerable time and resources to defend against Defendant's efforts to consolidate the various arbitrations into one action. Each attempt was ultimately defeated but only after considerable argument and effort by Plaintiff's counsel. During this process Defendants purposely hid the existence of the non-consolidation provision in the Handbook, and only revealed it when they moved to dismiss Plaintiff's lawsuit. Only after they lost all of their motions for consolidation in arbitration did they then provide a copy of the Handbook.

14. From September of 2020 until as recently as March 2021, Defendants made three separate attempts to consolidate the Arbitrations before the AAA. They raised the issue of

consolidation in the arbitrations of Angel Pineda Tenen, Tiffany Ramirez, and Ahlal Ahmed, with each of the arbitrators. Each time, their argument was that the freestanding arbitration agreements the claimants had signed (substantially identical to the agreement signed by Plaintiff Cabrera) do not expressly prohibit consolidation: "There is nothing in the agreements preventing an arbitration from being consolidated with another." And their motion papers cited case law for the proposition that consolidation may be appropriate when the agreement is silent on the matter. The Handbook, however, was *not* silent on the matter, and they purposely hid the evidence until they lost their consolidation motions, only to release it to dismiss Plaintiff's case. Defendants did not disclose the Handbook sooner because it would have upended Defendants' efforts to consolidate the various arbitrations. Defendants' strategic failure to disclose has cost my firm valuable time, money, and resources, on all fronts.

15. Attached hereto as **Exhibit A** is a true and correct excerpt from the Declaration of Alex Abadi in *Moore v. T-Mobile USA*, 1:10-cv-00527-LDH-CLP (E.D.N.Y.) (Dkt. No. 85), reproducing the arbitration agreement at issue in that case.

December April 19, 2021

**LEE LITIGATION GROUP, PLLC**

By: */s/ C.K. Lee*

C.K. Lee, Esq. (CL 4086)
Lee Litigation Group, PLLC
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181

*Attorneys for Plaintiff, FLSA Collective Plaintiffs and the Class*